Heimer v. Harley-Davidson Motor Company, Appeal No. 24-2111. Harley-Davidson Motor Company, Appeal No. 24-2111. Heimer v. Going to the antitrust tying claim, my understanding is that your theory of the tying product is the bundling of the motorcycle plus warranty. Is that correct? Yes, Your Honor, and I just want to back away from a word. The term bundling, the term bundle... No, no, I'm not using bundling in the antitrust. You're basically saying that when you buy a motorcycle, kind of like the tires that come with it, you get this warranty, right? Yes, Your Honor, and I want to just reach for a fanciful example. So because of this relationship between the warranty and the motorcycle, if, for example, the tying product were a motorcycle and a sidecar, and then Harley-Davidson's policy was you have to agree in order to get that package to buy only Harley-Davidson aftermarket parts, and then if you don't do that, if we find out that you've purchased a competing part in the aftermarket, we can send someone to your home and unbolt the sidecar and take it back. I think we would say that they're denying access to that package in the tying market in order to get people to agree not to buy the competing product in the tying market. So that's kind of where the question comes in. So I'm trying to wrap my head around kind of the... Because your colleagues on the other side suggest that the tying product is actually just a warranty, right, and not the bicycle. There's some kind of statement in the brief about that. And so just trying to identify... And I understand that there's no kind of independent product market for the new warranty, right? There's no one selling it online. You can't go buy a new warranty. And so it's hard to kind of see it as a product because there's no market for it, right? But my question is, you know, unlike other tying claims, here you have a claim where what you lose is not the motorcycle, but what you lose is just part of the package, right? What you lose is the warranty. And that kind of brings to mind the follow-up. Number one, I'm wondering whether that has any substantive impact on the claim. And secondly, related to that, I'm wondering if there are any allegations about whether or not the existence of the warranty is material to a consumer's purchase decision, right? Because you've alleged that Harley-Davidson has this huge market in the American-made large motorcycle market. And so one would think that a consumer that wants to get into that market really has no choice but to accept the warranty. And so if that's not material to the decision, well, then what damages are there if they don't have the warranty, right? Right. So, Your Honor, I would think that this is fundamentally an economic question. Either that term allows Harley to extract a premium in the tied market, or it does not. And the complaint pleads that it does. I would call the court's attention to paragraph 63-64 of the complaint, also 58 and 78 and 79, but especially 63 where we plead that there are riders out there who prefer the third-party competing aftermarket product, but that buy the Harley product in preference, and that they do so at a premium that they know they're paying, but without a corresponding improvement in quality. If Harley-Davidson is able to extract a quality-free premium, it's got to be for a reason. So what I think we've done is plausibly allege the mechanism and the effect. I think that's direct evidence of the impact, if that answers Your Honor's question. Well, I guess in some respect, I take it that the next question that I would have is with regard to why a two-year term has any kind of material impact, a substantive kind of antitrust competitive impact. And I take it your response would be, well, that's something for economic experts to hash out during discovery as opposed to now. Well, I would answer that in two ways, Your Honor. And that's one of them, and the other is the proof is in the pudding. If Harley-Davidson is, in fact, able to extract a premium in the tied product market, then it means that the threat that they hold is great enough to raise these concerns. At the pleading stage, I think our burden is to be plausible. And I think if we say they've got this policy, and this policy results in a premium in the separate market, I think we've made out our pleading burden. So, yes, I think where that gets me to is it's an empirical question. That's for economists to argue. They either are or they are not extracting a premium for that reason, but we've pleaded the reason and the premium, so I think we're plausible at this stage. That might be for the Section 1 tying claim, but for the Section 2 tying claim, you need more with regard to more allegations and evidence with regard to Harley-Davidson's market power in the tied market, right? Well, so I want to say several things in response to that, Your Honor. One of those is that we're suing under the Wisconsin statute, not under Sherman. And while they are harmonized for purposes of defining any unlawful conduct, the structure, state antitrust laws are sometimes called baby Shermans, but they actually aren't, and several of them are both older than and structured differently from the Sherman Act. The Wisconsin statute, which is our count one and where Harley's headquartered, doesn't actually break out Section 1 and Section 2, so it sort of makes the distinction between, we call it a Section 1 type and a Section 2 type. I guess, you know, to say, I call it the kind of the Section 2 type, which would be kind of monopolization or attempted monopolization, right? And so in order to do that, you have to plausibly allege that by doing this conduct, offering this kind of limited warranty in the way that you allege, that it will have a dangerous probability of monopolizing the tied market. But there's nothing in the complaint that gives me any indication as to whether or not two years is sufficient or has any – is going to have any impact in that market. So, for example, there's nothing in the complaint that talks about, you know, after two years, what percentage of the market does Harley have, right, of the aftermarket compatible parts prior to the two years before then. And I guess my thinking is that if the percentage for the two years is minuscule compared to the percentage of Harley sales after the two years, then it's difficult to see how the restriction in the two years would have kind of an outsized impact at all. And so, Your Honor, I would ask the court to look at what we did plead is the overall relationship of Harley as a parts seller to its biggest competitor, and it's something like 23 times the size. We gave the revenues of Custom Chrome, who we understand to be their biggest competitor, and of Harley-Davidson. We can't say exactly what their market share is in the aftermarket parts, but we can say that they are a huge firm in comparison to a bunch of Lilliputians in the competitor fringe. So I think from that, we can infer, right? I don't want to monopolize your time, but I guess I just have one more question with regard to that before, you know. I understand that, but when you're looking at this particular restraint, you're looking at a two-year period, right? And so you say Harley has this huge market share in aftermarket parts, right? But we have no allegations as to what portion of that is the two-year market versus the overall market. And we need to have some allegations about what constitutes the two-year market in order to come up with some plausible theory about attempted monopolization. That's what I'm trying to get at. I hear that, Your Honor, and I think the answer to that is you have to have enough from which something can be inferred. But if Harley is, in fact—Harley's parts compete with the competitor fringe of parts for all the bikes that are off warranty, right, which is the court's concern. If Harley can, in fact, impose a premium because the folks whose bikes are still under warranty are concerned enough to affect the price, that's the answer. We may not be able to quantify it, but if there's a price impact, it's because the number of people out there whose bikes are off warranty who are buying customization of performance enhancing parts is not enough to claw that price impact back down. The price impact proves that the two-year warranty is enough of a difference to move the needle. I mean, it could be also Harley's brand, right, that people just prefer buying Harley stuff than non-Harley stuff. I guess I'm just trying to figure out whether or not we can make that plausible, that inference, as you say, without knowing what the relative markets are in the two-year market versus the post-two-year market. So, Your Honor, we've actually got specific allegations about that. The premium is not explained by people simply preferring Harley's branded parts in the aftermarket and that the premium is not explained by a greater quality or by brand premium. And I've cited to you the paragraphs of the complaint. At pleading stage, we've taken that explanation out of play. And, Counsel, if I'm looking at this 2016 Harley Motorcycle Limited warranty at A264 and then the Touring Owners Manual A325, if I look at that and I come to the same conclusion as Judge Greisbach, right, and I say, you know, there is nothing in here that explicitly says that the use of an aftermarket part voids the warranty. And the warranty at 264 says nothing about that. I can read these two together. Maybe some find some confusion. But if I come to the same conclusion as Judge Greisbach, does that confusion alone, does that create enough of this coercion to allow you to proceed with a tying claim? Well, first of all, Your Honor, if the question is how a reason – if the issue is one of implied warranty, the standard is how a reasonable Harley-Davidson purchaser would read the warranty. And if they would be concerned about having the warranty revoked from the section that says keep it all Harley-Davidson, then I think we meet that standard. But second, we've actually got specific pleadings about how it was enforced that I think control that. We have – I would commend to the Court's attention 33 of the complaint. We plead that people who had – Was that the posts about going to the dealer and being told you could – Right, and 35 where we plead the incentive. So taking the incentive pleadings and the dealer experience pleadings together, I think we've plausibly alleged based on specific instances that people are going to dealerships and finding, well, gee, that's enforced such that the way the plaintiffs say it is true. If I put an aftermarket part on my bike, Harley can and will say your warranty is no good here anymore. So I think that's my attempt to answer your question. Mr. Burt, can I go back to Judge Lee's first question regarding the Section 1 claim and the tying – the existence of the tie here? Do you agree that the warranty does not create an actual tie? No, I – That you make an economic forcing argument? I do not agree, Your Honor, that it doesn't create an actual tie. Then what is your tying product? The tying product is – Go ahead. The tying product is the package of bike and warranty. So it's the warranted Harley-Davidson motorcycle, right? Yes, Your Honor. That's the tying product. Yes, Your Honor. Okay. So we say you can't get that if they say that if you do the thing we don't agree with, we will take away one of those things. But if the tying product is the warranted new motorcycle, then the aftermarket parts are not directly tied to the tying product, are they? Consumers can just lose out on the incentive, the warranty. Well, that's taking away part of the package. But how is that an actual tie is what I'm – if the tying product is the warranted Harley-Davidson motorcycle, then the aftermarket parts, if they use the aftermarket parts, they're just not taking advantage of the incentive, which is the warranty. How does that create an actual tie? I think they're – I think the illustrative example that I used before, the sidecar, if they're taking away part of what they sell you, that's the same as saying I won't sell you this if you don't promise not to buy that. A promise not to buy a thing from a competitor in the aftermarket, going back to Northern Pacific Railway, is the same as a tie. They're saying if you buy this competing product, you will lose the value of the thing you bought. I don't think that's the same as not using it. I think that's the same as having it taken away. That's the same as them saying they won't sell it to you. I'm just trying to make sure I understand. So what you're saying is basically that the – for example, in a hypothetical market, a warranted bike would have more value than a non-warranty bike, right? And so the consumer is paying a little premium anyway on the warranty. And so what the consumer is kind of losing is that kind of greater value package as opposed to just a bike without the warranty. Yes, Your Honor. And I get that theoretically. What I get stuck at is that in reality, there is no market for bicycles without warranties, right? And so is it just a matter of damages then, or is it just a matter of economic experts to figure out how much coercion there is? I'm just trying to figure out how to get my arms around it because it doesn't really seem to match any of the typical – even like the atypical tying cases that we see. Well, Your Honor, there is a market for bikes without warranties, but that's a separate market, right? It's different enough that you can go buy – There is, just not new ones, right? Because Harley won't sell you – yes, we don't have that operating in the marketplace now. Harley won't sell you that, but that doesn't mean it doesn't have value. And I'm assuming that you don't think that the used market and the new market are the same markets, right? No, and Harley hasn't – I don't think Harley asserts they are. Certainly, we say they're not. Certainly, we plead that they're not. If I could just – With regard to the warranty claim, the Magnuson Moss claim, is it your position that even if the warranty on its face says may, if in fact the dealerships are treating it as will, that that's a violation? That is precisely our position, Your Honor. If in fact it's enforced the way we say it is, if a reasonable person would read it to do what we say it does, or if it is enforced in fact the way we say it operates, then that's sufficient. That's our position under the state warranty laws as well as under Magnuson Moss. If these questions – if jurisdiction kicks Magnuson Moss, we're still left with the problem that the court has read the warranty in a way that I think is inconsistent with the several state law claims, and we should still deal with that if the court is dealing with the antitrust anyway under CAFA. But I see that I've long run my time. Yeah, that's okay. We're going to give you extra time. Mr. Burt, I want to ask you – I want to go back to my question, then I'm going to let you sit down. Okay, and we'll give you a rebuttal. But I'm still confused as to how there's an actual tie. If the tying product is the warranted motorcycle, nothing is compelling you to buy Harley-Davidson aftermarket products. There's nothing. If you buy an aftermarket product, you just don't get the warranty. So that means there is no actual tie. An actual tie is if you buy the warranted motorcycle, you must buy Harley-Davidson parts. Here, you don't have to buy Harley-Davidson parts. You just don't get the incentive. And I think that's why Harley-Davidson's lawyers say this is actually an economic forcing argument. It's not an actual tie. So I want to take that in two parts just because of the way Your Honor linguistically framed it. Your Honor said, and I'm paraphrasing, that it would be a tie if you have to buy the motorcycle and have to buy the aftermarket parts. I want to lay that aside. Northern Pacific says that a negative tie is still a tie. Just because you may decide never to buy an aftermarket part doesn't mean it's not a tie. A promise to never buy our competitors' products in the aftermarket, that's still a tie. The other part of Your Honor's question is, well, by electing to buy a competing product in the aftermarket, to sort of, again, break that promise, all you're electing to do is forego the warranty. Our position is the warranty is part of the value of the product you're buying, and they will not sell you that package, bike and warranty, without that promise. And if you break that promise, they will take from you the value of the thing they can take away. Okay. All right. Thank you. And we'll give you your rebuttal time. Thank you, Your Honor. Okay. Mr. Rockey. Good morning, and may it please the Court. My name is Cody Rockey, and along with my colleague, Chris Lenart, I represent the Harley-Davidson defendants. I had planned to spend my time today addressing two points that I sort of view as predicates to some of the questions that the Court was asking Mr. Byrd this morning about. The Court's finding that there was no conditioning in the warranty. Can you start with jurisdiction? But I will start with jurisdiction, Your Honor. I believe in the jurisdictional statements, both in our response to the docketing statement and in our brief, we set forth Seventh Circuit opinions that have decided you can have supplemental jurisdiction over a MAG-MAS claim when one of the MAG-MAS federal question jurisdiction elements isn't met. In those cases, they hadn't addressed the lack of 100 named plaintiffs, but the same reasoning applies to those cases. Even if that isn't met, the Court can exercise supplemental jurisdiction. So we would have to find here that the District Court dismissed the CAFA claims on the merits and then exercised supplemental jurisdiction over the MAG-MAS claims and dismissed those on the merits without expressly stating that it was going to exercise supplemental jurisdiction over the MAG-MAS claims. I think that is right. That's the easiest path here. But as we set forth in the briefs as well, there's the Generact decision. It's not out of the Seventh Circuit, but it's a recent decision from a federal district court in Wisconsin that does the further analysis finding that you can actually exercise original jurisdiction over the MAG-MAS claims pursuant to CAFA. That the federal question jurisdictional requirements within the MAG-MAS Act don't preclude the Court from exercising diversity jurisdiction here in the form of CAFA jurisdiction over the MAG-MAS claims. Although both circuits that have addressed that and published opinions have rejected that reasoning, right? That is correct. There are circuit courts that have rejected that reason. This court has raised the question but not addressed it. And I think that the Generact decision also addresses those other circuit court decisions and explains, I think, in a thorough statutory analysis of why the Court could go the other direction. But in either case, the Court would have jurisdiction over the MAG-MAS claims as well. I'm happy to address further questions on that if you had them. I think that it's important to point out here that the district court held that Harley-Davidson warranty was not conditioned on the use of Harley-Davidson parts. And it did so after looking at the text of the warranty and the statements in the owner's manual that plaintiffs here have focused on. And there was no error in the district court's interpretation of that warranty. And that finding alone disposes of all of the claims in this case. All of the issues we've been discussing about the antitrust claim here sort of require that there have been the conditioning there for there to be coercion. So all of those perhaps more complicated antitrust questions don't even arise with a finding that the district court was correct in its interpretation of the warranty. And that alone is reason to affirm here. But under the MAG-MAS Warranty Act, even if the district court's interpretation is correct and we have its interpretation of a contract, so we have de novo review over that interpretation, but even assuming that's correct, if in fact Harley-Davidson in the real world is conditioning the warranty on use of Harley-Davidson approved product, would that still constitute a violation of Subsection C of the Act? I don't believe so, Your Honor, because I believe it requires that the condition be in the written warranty under the MAG-MAS and MAS Act. But I would also – And I guess where do you – I was looking for that. And I didn't see it in the statute or in the regs. And so I was wondering where you find support for that argument that it has to be in the written – I believe in the text of Section C that you're referring to, it says, no warrantor of a consumer product may condition his written or implied warranty on the consumer using parts. But perhaps even more important to that question, Your Honor, is that this concept that Harley was actually requiring consumers to use Harley-Davidson parts is one that they raised for the first time in their reply brief. The parties did brief that question below, but I think it's worth pointing out that two things. First, no named plaintiff in the case alleged that that happened to them, that their warranty was denied because they had used non-Harley-Davidson parts on their motorcycle. The second thing is that those allegations in the complaint are based on two statements that they took off of YouTube. And at the district court below, we provided the full context for those statements on YouTube to the court. And you can find those in the appendix that was filed here. Those are at pages 321 and 322. And what you see is that what was actually said was not that a consumer's warranty claim was denied because they had used non-Harley-Davidson parts, but you find rather that there was some other issue that is consistent with the district court's reading of permissible limitations on the warranty that have arised. So in fact, plaintiffs have not offered any allegations that plausibly suggest that Harley-Davidson was actually denying warranty claims like this. In one case, there was wind drag that was being caused by a product the consumer had used. In the other case, the consumer had put performance upgrades on their bike, and it was sort of one of these issues related to the EPA consent decree that is discussed in the party's papers. So there's not even, in this case, actual requirements being enforced to some extent of this sort. What if the complaints just flat out alleged that certain Harley-Davidson dealerships, they were saying that the warranty was void because they did not use Harley-Davidson parts? Just a flat allegation. At the pleading stage, would that be enough in your mind to state a subsection C claim? I don't believe that it would, Your Honor, because again, they haven't alleged at that point that Harley-Davidson has conditioned the warranty that it gives to consumers on the use of Harley-Davidson parts. If they were told by somebody else that there was some policy in place that wasn't actually Harley-Davidson's policy, which is set forth in the warranty documents that do not require that. So if they go to a Harley-Davidson dealership for service and the dealer says, oh, no, we're not going to honor the two-year warranty, you're saying that that's not Harley saying that they're not going to honor the warranty? I think that would be a very fact-specific question about the circumstances and the nature of the statement. But we're at the pleading stage, right? I guess that's the other thing I'm trying to understand is why isn't that just something that is appropriate for discovery? I think a couple of things. I believe we have to look at what's actually in the complaint here, and I don't believe plaintiffs have alleged that. Certainly none of the named plaintiffs have alleged in the complaint that that happened. And I appreciate your argument, but I guess I'm just trying to get an answer to my question, which is assume that they did have a flat-out allegation that Harley-Davidson dealers are denying warranty claims because the consumer was using non-Harley parts. And so my question to you is in that hypothetical, do you think that that states a Subsection C claim? I think it would depend on more about what was said and what the circumstances of that, including the fact that all the parties agree in this case that there are instances where the use of a non-Harley-Davidson part can lead to a permissible warranty limitation. And so I think there's a lot of details that might matter to that analysis here. And I think it's important that here plaintiffs have repeatedly alleged in the complaint that it's the warranty documents that told them of the conditions that they claim existed. I believe that's Paragraph 124 of their complaint. It's in the warranty documents. And that's why sort of the predicate issue, I think, to these items here is that the warranty doesn't say that. The warranty doesn't require the use of non-Harley-Davidson parts, and I think that's clear. The warranty does require a customer to operate or maintain the motorcycle as specified in the owner's manual, right? That is a statement. And that's exclusion one. That's right. And there are points in the owner's manual that talk about proper operation of the vehicle. You know, Harley can't be warranting people who are off using a motorcycle in ways that I'm sure we all couldn't even imagine. And there's a proper maintenance schedule there, right, just like with your vehicle, things like proper oil changes and the like. You know, they can't be warranting a vehicle that people aren't, you know, taking care of in the way that they were. And there are sections on operation and maintenance in the owner's manual specifically. And the owner's manual has statements to use only Harley-Davidson approved parts and accessories. So the plaintiffs have highlighted that section of the owner's manual, but I think it's very important to not look just at the sentence that they pull out in their complaint, but you have to look at the entire section that that appears in. And immediately, both preceding and following the sentence that they focused on, is an explanation that you have to use parts that are proper for your motorcycle. And it even notes that there are Harley-Davidson parts that won't be proper for your motorcycle. And that's in the very paragraph that is at the heart of their allegations here. And in the same section, you know, it talks about the problems that can come with using performance parts. And it tells the consumer that you can go look in the warranty itself. And the very page that that's on at the very beginning tells the consumer that there's a warranty in the manual. And, you know, you can go look at the warranty itself. But if, as a district court construed the warranty, exclusion one is basically limited to, you know, modifications that for off-road competitive parts or modifications that don't comply with EPA regulations, wouldn't exclusion one be basically just superfluous? Right? I mean, that's the first exclusion. The, I mean, why even have, right, we look at this contract, and I know it's not a statute, but, you know, we're so, you know, we're all textualists to some extent. And we look at it and we say, well, you know, there's this very broad statement, and then these kind of two more narrow statements on the broad statement. Does that mean we just read the broad statement out? So I don't think things work that way, right, when you read a document. So I think if you read the first exclusion, I think, that you're specifically pointing to here, there are sections of the owner's manual about operating proper operation of the bike and proper maintenance of the bike. The sections they are talking about are not those sections of the owner's manual. They are in sections about other aspects. There are other sections. And so the owner's manual doesn't say that in order to properly, in order to maintain, when you maintain the bike, to use Harley-Davidson approved parts. I don't have that section in front of me, so I don't want to represent what is or is not in there specifically. But the section plaintiffs are focused on is a different section, and I believe that those statements in the owner's manual don't become superfluous merely because they repeat sort of warnings, I'll call it, to the consumer that beware. If you do certain things to your motorcycle, you may create uncovered damage out of the warranty. And those sort of beware statements are made repeatedly in the owner's manual, and they're not, I don't think that's at all inconsistent with reading the warranty itself as requiring certain things, and the fact that we're sort of telling consumers beware throughout the owner's manual I don't think renders anything superfluous. I guess, you know, if exclusion one wasn't there, I think I might, you know, like that argument, it seems to have some force. But you look at exclusion one, which says operate or maintain as specified in the owner's manual, then you look at portions of the owner's manual that is cited in the complaint, section 114, and it says emphatically, declaratory, you know, imperatively, this is an imperative sentence, use only Harley-Davidson approved parts and accessories. Insist that your authorized Harley-Davidson dealer use only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact. Those don't seem to me to be squishy, ambiguous statements. I mean, those seem to be very direct imperative statements about what, how you should maintain your vehicle. And I think that it's important to read the immediately preceding and following sentences to put that, those statements in context that note that Harley-Davidson parts are engineered and tested specifically for use on your motorcycle, and that not all parts and accessories are appropriate for your model of motorcycle. And, you know, continuing on in that section, including the off-road and competition parts can create issues with your warranty. It just, I don't think it is a reasonable interpretation of the contract to pluck that one sentence out of the owner's manual without the context of what the warranty actually says and how the warranty is actually interpreted to say that there is a condition here. I'm happy to take other questions. I see that my time has expired. I guess with regard to the tying product, is it your position that the tying product is the warranty? In your view, what is a tying product? So they've alleged that a tying product is this bundle of the motorcycle and the warranty. And I agree with, I believe, the sentiment that was being expressed in some of the questions earlier is that allegation renders this not an express tie because you can purchase the bundle and do whatever you want with respect to purchase of the parts. Now, if plaintiff's interpretation of the warranty restrictions were correct, there would be some sort of consequence to that. I don't think there are any allegations that that consequence is material to a consumer in their purchase decisions. None of the named plaintiffs have come up and said this was material to us. We made parts purchases because of how we understood the warranty operated. None of them even alleged that they only purchased Harley-Davidson parts here, let alone that they did it because of what's in the warranty. Is that a standing issue, or is that a class certification issue, or is it both? I think it goes to the plausibility of their claim that there's coercion here. If consumers were reading all of these statements in this document the way plaintiffs say a consumer would, then you would expect the 15 people who sued Harley, or at least one of them, to come forth and say, yeah, that's how I read it, and yeah, that coerced me to make a purchase a certain way, and none of them have alleged that. So I think it goes to the plausibility of what they're saying happened here, the fact that none of them are saying they operated in the way that they're alleging consumers would have operated here. Some of them do allege that they purchased Harley-Davidson parts. Our point is they don't say we didn't also purchase non-Harley-Davidson parts, and importantly they don't say we did that because we were concerned about losing the warranty, or the warranty was so valuable to us that we felt we had to purchase these parts that we didn't really want to purchase here, which goes to the coercion element. And I think the question about the tying product here really illustrates that this is not an express tie case, that at bottom their theory is one of economic coercion, and I think the proper reading of the district court's dismissal of the antitrust claims is even if there was warranty conditioning, they have an alleged fax that would support economic coercion. It must be coercive because it's in a warranty, and the cases don't say that, and the court says there's no factual allegations making it plausible that it's too costly to give up that warranty protection. If there's nothing else, I think Harley provided many avenues for affirming the district court's decision, all of which we think give grounds for this court to affirm, and I thank you for your time. Thank you, Mr. Racky. Okay, Mr. Burke, I'll give you three minutes, your rebuttal. Thank you, Your Honor. We do, in fact, antitrust claims work on markets, not on individuals. If there is some individual who has purchased the bike in the warranty because you can't get the bike without the warranty or won't get a discount if you take it without it because they're, for example, a really good mechanic and they don't care, that doesn't answer any antitrust question. What they plead is that they have paid more for parts in the aftermarket where Harley is dominant. In the aftermarket also is a dominant firm. They have paid more for aftermarket parts because of Harley's actions upon the market. The question is whether there are enough people out there who will buy the Harley aftermarket parts at a premium, even though there's no corresponding increase in quality because of Harley's warranty practices. I understand how that gets you to an implicit tying claim. I don't understand how that gets you to an explicit tying claim. I understand the distinction the court is drawing. It just seems like that is the quintessential economic forcing argument. Well, if that's the way to construct this, Your Honor, then I would ask the court to take a look at – put in mind Viya Media and the way the court talks about Microsoft and Viya Media. If we're talking about this as economic forcing, if this isn't economic forcing, then why is there a premium? And I think there are specific allegations that there's a premium to the aftermarket parts, which is a market in which Harley has market power, in which Harley is far and away the dominant supplier. We don't plead monopoly for the tied market. We plead monopoly for the tying market. But it's a market in which Harley clearly is huge in comparison to its largest competitors and where we say it extracts an actual premium. So doesn't that tell us that the force is actually effective? Isn't the proof in the economics? And I guess your theory is that if it weren't for the economic coercion, then no one would buy the Harley-approved parts because they're more expensive than the non-Harley-approved parts. Or to be profitable, they would have to take their prices down to match the corresponding aftermarket parts, right? And every single purchaser of aftermarket parts would be a beneficiary. It's also output restrictive in the sense of innovation too, because if an aftermarket maker has a great idea for a performance part, but they have to do this mental calculus. We have the post-warranty bikes out there. But if we don't have enough of the warranty bikes who will give up their warranty in order to use our part, we have to decide whether we're going to be able to profitably enter this market. If there's a reasonable calculus, Your Honor, under which they say, no, we better not put this new innovative product out there because if we have no access to the part of this market that's covered by the warranty, we just can't do it. If that's plausible, then we should prevail because that's an output restricting arrangement. My concern is a little different than that. My concern is that what you're trying to suggest is that the warranted motorcycle is the tying product to the aftermarket parts. Because if you did it a little differently and said it's the unwarranted motorcycle and the tying product is the warranty, right, so you can't buy one without the other, then you lose under antitrust law because of market power. Because there's so many more unwarranted motorcycles on the market than there are warranted motorcycles. Market definition, you can't win. There's an assumption there, Your Honor, that I don't agree with. The assumption there is that the Harley-Davidson used motorcycle that's off warranty, that is out there in the real world, competes in the same market with the new one. There's nothing in the pleading that says that. And if I read Vasquez right, though Vasquez was about a geographic market and health care, I read Vasquez to tell the district court, don't try to substitute your own judgment for whether the well-pleaded allegations of market definition are right. I figured that if we were going to have a discussion about market definition, it would be about the national requirement, about whether American is listed. Yeah, we read all that, though. We read the briefs on that. We got that. But Your Honor's question puts me in mind of the same sort of exercise. The assumption behind that question is if the new unwarranted motorcycle alone is the product, then it competes with every used bike. The pleadings right now are silent about that, but I think they're not quite silent. We say that they don't, but there's not a lot of factual pleading. I think that's backfilling a justification for the district court to revisit market definition in another way. Yeah, I understand that. I understand, but that's just why I thought you pled it that way, but I understand. Okay, well, thank you. Thank you, Your Honor. Thank you, Mr. Byrd. Thank you, Mr. Rockey. The case will be taken under advisement.